In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00232-CR

                                                ______________________________

 

 

                                   DOYLE LEE MCCRARY,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 349th
Judicial District Court

                                                           Houston County, Texas

                                                         Trial Court
No. 09CR-046

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            In
a single jury trial, Doyle Lee McCrary was tried and convicted,[1]
and his punishment was assessed, for aggravated assault with a deadly weapon,
injury to an elderly person, and aggravated robbery, arising from his role in
the botched attempt to steal thousands of dollars from Hollis Ellis, an elderly
person, who was repeatedly struck in the head with a hammer by Rebecca
Cleveland on December 9, 2008.[2]  We affirm the judgment of the trial court
because McCrary’s convictions do not violate the Double Jeopardy Clause of the
Fifth Amendment to the United States Constitution[3] and
because McCrary was not entitled to the inclusion of certain purported lesser-included
offenses in the charge of the court.

I.          FACTS AND PROCEDURAL
POSTURE

            In a multi-count
indictment, McCrary was charged with aggravated assault with a deadly weapon,
injury to an elderly person, and aggravated robbery, committed against the same
victim on the same date.  The jury charge
authorized the jury to convict McCrary of all three offenses, which it did.  The jury assessed punishment at fifteen years’
imprisonment in the Texas Department of Corrections–Institutional Division—for
the aggravated assault conviction, thirty years’ imprisonment for the injury to
an elderly person conviction, and twenty-five years’ imprisonment for the
aggravated robbery conviction.  All sentences
are to run concurrently.  McCrary
contends on appeal that he could not be punished for all three offenses
consistent with the Fifth Amendment prohibition against double jeopardy.  He further contends the trial court erred in
failing to submit certain lesser-included charges to the jury for
consideration.

            The
evidence at trial showed that during the afternoon hours of December 9, 2008,
Eric Cleveland and his wife, Rebecca, along with McCrary, traveled to Ellis’
home in Houston County, Texas, with the intention of robbing Ellis of the
thousands of dollars he was known to routinely carry in his pants pocket.  The three planned the robbery the preceding
day, and determined that Rebecca would hit Ellis with a hammer she had hidden
in the sleeve of her pullover jacket, take his money, and leave.[4]  McCrary was to attack Jimmy Lenox[5]
if he got in the way and Cleveland was to act as a lookout and drive the
car.  As they arrived at Ellis’ house,
McCrary grabbed the hammer and told Rebecca to hit Ellis with it, but not to
kill him.  Rebecca told Lenox, who
answered the door, that she was having car trouble and asked him to go out and
take a look at it.  

            Once
outside, Lenox saw Cleveland and McCrary, who was wearing a bandana around his
face.  After McCrary (who knew Lenox and
Ellis) explained it was a joke, Lenox proceeded to check the car for
problems.  Meanwhile, inside the house,
Rebecca approached eighty-one-year-old Ellis and asked for money.  When Ellis stated that he did not have any
money, Rebecca retrieved a hammer from under her shirt, fell in Ellis’ lap, and
beat him in the head with the hammer. 
Here, the testimony differs. 
According to Ellis, he caught the hammer and she ran from the
house.  According to Cleveland, who
entered the house when he heard Ellis shout for help, he grabbed his wife’s
wrist and pulled her out of the house. 
When they saw Lenox approach with a gun, the three ran from the house
and sped away in the car in which they arrived—one that had no problems,
according to Lenox.  Even though Lenox
fired on the car as the three made their getaway, they were able to escape
without injury.  Each of the three were
arrested a short time later for the actions committed on that December
afternoon.  Ellis was hospitalized in the
intensive care unit of the local hospital overnight, but recovered from his
injuries and testified at trial.  

II.        ANALYSIS

            A.        Double Jeopardy

            The indictment
contained three counts accusing McCrary of aggravated assault with a deadly
weapon[6]
(count one), injury to an elderly person[7]
(count two), and aggravated robbery[8]
(count three).  McCrary made no objection
at trial regarding the submission of each of the three counts to the jury, and
all counts were therefore submitted.  The
jury convicted McCrary on each count.  On
appeal, McCrary claims all three charges are the result of conduct-oriented
behavior, and allege the same act, the same injury, and the same individual,
thus violating the protections afforded by the Double Jeopardy Clause of the
Fifth Amendment.   

            While
McCrary did not raise his double jeopardy claim in the trial court, under
certain circumstances, a double jeopardy claim may be raised for the first time
on appeal when the undisputed facts show the double jeopardy violation is
clearly apparent on the face of the record and when enforcement of usual rules
of procedural default serve no legitimate state interests.  Gonzalez
v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).  

            The
Fifth Amendment guarantee against double jeopardy protects against a second
prosecution for the same offense following conviction, a second prosecution for
the same offense following an acquittal, and against multiple punishments for
the same offense.  Illinois v. Vitale, 447 U.S. 410, 415 (1980); Ex parte Cavazos, 203
S.W.3d 333, 336 (Tex. Crim. App. 2006). 
McCrary invokes the third of these protections.  For convictions involving multiple
punishments for the same offense, the double jeopardy violation is clearly
apparent on the face of the record when the record affirmatively shows multiple
punishments resulting from the commission of a single act that violated two
separate penal statutes, one of which is subsumed in the other.  See
Cervantes v. State, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991).  Because it is apparent that McCrary’s
convictions are based on the same conduct, if there is a double jeopardy
violation, it is apparent on the face of the record.  See,
e.g., Johnson v. State, 208
S.W.3d 478, 510 (Tex. App.––Austin 2006, no pet.).  McCrary is therefore entitled to raise his
double jeopardy complaints for the first time on appeal.

(1)        Conviction
for Injury to an Elderly Individual is Not a Double Jeopardy Violation

 

            We
begin our analysis of McCrary’s double jeopardy claim by looking to the second
count of the indictment, which alleges injury to an elderly person, pursuant to
Section 22.04 of the Texas Penal Code.  Tex. Penal Code Ann. § 22.04 (Vernon
Supp. 2010).[9]  McCrary was convicted of  “[i]ntentionally or knowingly caus[ing]
serious bodily injury to Hollis Ellis, an individual 65 years of age or older,
by hitting him in the head with a hammer.”  Section 22.04(h) plainly authorizes multiple
punishments when a defendant’s conduct violates both Section 22.04 and another Penal
Code section:

A person who is subject to prosecution under both
this section and another section of this code may be prosecuted under either or
both sections. . . .

 

Tex.
Penal Code Ann. § 22.04(h).  

            The
double jeopardy guarantee against multiple punishments for the same offense is
designed to prevent the sentencing court from prescribing greater punishment
than the Legislature intended.  Missouri v. Hunter, 459 U.S. 359, 366
(1983); Ex parte Kopecky, 821 S.W.2d
957, 959 (Tex. Crim. App. 1992).  When
the same conduct violates more than one distinct penal statute and each statute
requires proof of a fact that the other does not, it is presumed that
the two offenses are not the same and that the Legislature intended to
authorize multiple punishments.  Hunter, 459 U.S. at 366; Blockburger v.
United States, 284 U.S.
299, 304 (1932).  Conversely, if all the
elements of one statutory offense are contained within the other, it is presumed
that the two offenses are the same and that the Legislature did not intend to
authorize punishment for both. Whalen v. United States, 445 U.S. 684, 693–94 (1980).  An accused may be punished for two offenses
that would be regarded as the same offense if the Legislature has manifested
its intention that he should be.  Littrell v. State, 271 S.W.3d 273, 276
(Tex. Crim. App. 2008).  

            Because
the Legislature has clearly stated that an accused may be punished for two
offenses that could be regarded as the same offense, we find no double jeopardy
violation based on McCrary’s punishment for injury to an elderly individual in
addition to the punishment received for violation of another section of the
Texas Penal Code.[10]  When the Legislature specifically authorizes
multiple punishments under two statutes, even if those two statutes proscribe
the same conduct, “a court’s task of statutory construction is at an end and
the prosecutor may seek and the trial court or jury may impose cumulative
punishment under such statutes in a single trial.”  Hunter,
459 U.S. at 368–69; Johnson, 208
S.W.3d at 511 (conviction for violation of injury to elderly individual and
capital murder did not violate double jeopardy protections; multiple
convictions plainly authorized under statute). 
Thus, we find no violation of McCrary’s double jeopardy protections as a
result of his conviction of and punishment for injury to an elderly person in
conjunction with additional punishment resulting from violations of other Penal
Code provisions.

(2)        Convictions
for Aggravated Assault and Aggravated Robbery Do Not Violate Double Jeopardy 

 

            The
remaining issue in our double jeopardy analysis is whether McCrary’s double
jeopardy protections were violated as a result of his conviction and punishment
for both aggravated assault with a deadly weapon and aggravated robbery.  The principal test for determining whether
two offenses are the same for the purpose of double jeopardy was set out by the
United States Supreme Court in Blockburger:

The applicable rule is that, where the same act or
transaction constitutes a violation of two distinct statutory provisions, the
test to be applied to determine whether there are two offenses or only one, is
whether each provision requires proof of a fact which the other does not.

 

284 U.S. at 304.  Greater and lesser-included offenses are the “same”
offense for double jeopardy purposes.  Parrish
v. State, 869 S.W.2d 352,
354 (Tex. Crim. App. 1994).  What is
considered the same offense in the multiple-punishments context is a matter of
legislative intent.  Littrell, 271 S.W.3d at 276; Rogers v. State, 305 S.W.3d 164, 168
(Tex. App.––Houston [1st Dist.] 2009, no pet.). 
Although Blockburger provides the definitive test, the test is
not exclusive, and an accused may be punished for two offenses that would be
regarded as the same under a Blockburger analysis if the Legislature has
made this intention clear.  Littrell, 271 S.W.3d at 276.

            To
determine whether an offense is a lesser-included offense of another offense,
we begin by “comparing the elements of the greater offense, as the State pled
it in the indictment, with the elements in the statute that defines the lesser
offense.”  Hall v. State, 225 S.W.3d 524, 525 (Tex. Crim. App. 2007).  The elements of the offenses, as they are
pled in the indictment, also are compared to decide whether multiple
punishments violate the Double Jeopardy Clause. 
Id. at 532–33.  When the greater offense may be committed in
more than one manner, the manner alleged determines whether the other offense
alleged is a lesser-included offense.[11]  Id. at
531.  

            Thus,
we compare the elements of aggravated assault and aggravated robbery as the
State alleged those offenses in the indictment. 
McCrary’s indictment in the aggravated assault case alleged that on or
about the 9th day of December, 2008, McCrary

Intentionally, knowingly, or recklessly cause[d] serious
bodily injury to Hollis Ellis by hitting him in the head, and the defendant did
then and there use or exhibit a deadly weapon, to-wit:  a hammer, during the commission of said
assault. 

 

See Tex. Penal Code Ann.
§ 22.02 (Vernon Supp. 2010).  The
indictment in the aggravated robbery case alleged that on or about the 9th day
of December, 2008, McCrary

While in the course of committing theft of
property and with intent to obtain or maintain control of said property,
intentionally, knowingly, or recklessly cause[d] bodily injury to Hollis Ellis,
a person 65 years of age or older, by hitting him with a hammer.  

 

See Tex. Penal Code Ann.
§ 29.03 (Vernon 2003).  The Texas Penal
Code states that a person commits aggravated robbery if he commits robbery as
defined in Section 29.03, and he:

            (1)        causes serious bodily injury to another;

            

            (2)        uses or exhibits a deadly weapon; or

 

            (3)        causes bodily injury to another person
or threatens or places another person in fear of imminent bodily injury or
death, if the other person is . . . 65 years of age or older . . . .

 

Tex.
Penal Code Ann. § 29.03.  Here,
McCrary was indicted under subpart three of the statute, alleging bodily injury
(as opposed to serious bodily injury) and that Ellis was sixty-five years of
age or older at the time of the offense. 


            According
to the language of the indictment, for aggravated assault, the State had to
prove McCrary caused serious bodily injury and used or exhibited a deadly
weapon (“to wit:  a hammer”).  For the aggravated robbery charge, the State
had to prove that this same act occurred in the commission of a theft and that
Ellis was age sixty-five or older.  The
difference, however, in the aggravated robbery charge is that the State was
required to prove “bodily injury” as opposed to “serious bodily injury” as an
element of proof in the aggravated assault charge.  “We then ask the question that Article
37.09(a) poses:  are the elements of the
lesser offense ‘established by proof of the same or less than all the facts
required to establish[] the commission of the offense charged?’”  Hall,
225 S.W.3d at 536.  Under the cognate
pleadings approach adopted by the Texas Court of Criminal Appeals, double
jeopardy challenges should be made even to offenses that have differing
elements under Blockburger, if the
same “facts required” are alleged in the indictment.  The term “facts required” under Article 37.09
means the evidence legally required to prove the elements of the offense.  Hall,
225 S.W.3d at 536; Miles v. State,
259 S.W.3d 240, 246 (Tex. App.—Texarkana 2008, pet. ref’d).

            It
is clear that when comparing the two charges indicted, and taking into account
all of the elements that the State must prove for each charge, the two offenses
are substantially similar.  That is,
proof of each of the elements of aggravated robbery, as indicted, would also
prove each of the elements of aggravated assault, as indicted, with the
exception of the degree of bodily injury alleged.  Because aggravated assault requires proof
of “serious bodily injury” and aggravated robbery, as indicted, only requires
proof of “bodily injury,” the elements of aggravated robbery (the greater
offense) do not prove aggravated assault. 


            The
manner and means of alleging aggravated robbery is determinative of our double
jeopardy analysis.  The manner and means
can affect the availability of lesser-included offenses.  See Hall, 225 S.W.3d at 531 (noting “[a]ssault by committing
bodily injury is a lesser-included offense of aggravated assault by inflicting
serious bodily injury, but not of aggravated assault by threat with a deadly
weapon”).  For example, aggravated assault
was treated as a lesser-included offense of aggravated robbery in Jefferson v. State, 144 S.W.3d 612 (Tex.
App.––Amarillo 2004, no pet.).  In that
case, the elements of aggravated robbery as alleged in the indictment were that
the defendant, at the stated time and place, while in the course of committing
theft of property and with intent to obtain or maintain control of the
property, intentionally or knowingly threatened or placed the victim in fear of
imminent bodily injury or death while exhibiting or using a deadly weapon in
the form of a firearm.  Id. at 613.  The elements of aggravated assault, as
alleged in Jefferson, were that the
defendant intentionally or knowingly threatened another with imminent bodily
injury, and used or exhibited a deadly weapon. 
Id.  

            Here,
aggravated robbery was pled as causing bodily injury to Ellis, a person sixty-five
years of age or older, by hitting him with a hammer.  This allegation, pled in accordance with the
statute, does not include the element of serious bodily injury.  See Tex. Penal Code Ann. § 29.03(a)(3).
 The term “bodily injury” is defined as “physical
pain, illness, or any impairment of physical condition.”  Tex.
Penal Code Ann. § 1.07(a)(8) (Vernon Supp. 2010).  The term “serious bodily injury” is defined
as “bodily injury that creates a substantial risk of death or that causes
death, serious permanent disfigurement, or protracted loss or impairment of the
function of any bodily member or organ.” 
Tex. Penal Code Ann. §
1.07(a)(46).  By definition, these
statutory elements differ by degree of severity.  The allegation of “bodily injury” does not
include “serious bodily injury.”  

            The
two offenses are distinct under a strict application of the Blockburger
test, but the Blockburger test is a rule of statutory construction and
is not the exclusive test for determining if two offenses are the same.  Bigon
v. State, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008).  That is, offenses may be the same for double
jeopardy principles even when their elements differ under Blockburger, if there are other indicia of legislative intent to
treat the offenses as the same.  Ervin v. State, 991 S.W.2d 804, 810–11
(Tex. Crim. App. 1999). 

            In
Ervin, the Texas Court of Criminal Appeals set forth a nonexclusive list
of factors to consider when examining the issue of whether two offenses are the
same in the context of multiple punishment. 
These factors include:  (1)
whether the offenses provisions are contained within the same statutory
section; (2) whether the offenses are phrased in the alternative; (3) whether
the offenses are named similarly; (4) whether the offenses have common punishment
ranges; (5) whether the offenses have a common focus (i.e., whether the “gravamen”
of the offense is the same); (6) whether that common focus tends to indicate a
single instance of conduct; (7) whether the elements that differ between the
offenses can be considered the “same” under an imputed theory of liability
which would result in the offenses being considered the same under Blockburger
(i.e., a liberalized Blockburger standard utilizing imputed elements);
and (8) whether there is legislative history containing an articulation of an
intent to treat the offenses as the same or different for double jeopardy
purposes.  Bigon, 252 S.W.3d at 371.  

            Aggravated
assault and aggravated robbery are not in the same statutory section, as
aggravated assault is listed as an offense against the person under Title 5 of
the Texas Penal Code and aggravated robbery is listed as an offense against
property under Title 7 of the Texas Penal Code.  See Tex. Penal Code Ann. §§ 22.02, 29.03.  Because these offenses are not in the same
statutory section, they are not named in the alternative.  Because aggravated assault is a second-degree
felony and aggravated robbery is a first-degree felony, they do not have common
punishment ranges.  With the exception of
the aggravated nature of these crimes, the factors mentioned above indicate the
Legislature intended to impose multiple punishments for the violation of each
statute.  

            Both
aggravated assault and aggravated robbery have a common focus as pled:  bodily injury to Ellis.  Both crimes are result-oriented crimes with
injury being the result.  Given that the
result is the focus of these offenses, the sameness of the result is some
indication that the Legislature did not intend to impose multiple punishments.  In this regard, we recognize the changes in
the law of robbery that were made in the Penal Code of 1974.  Prior to those changes, theft was an integral
part of robbery.  However, the Penal Code
of 1974 required that theft only has to be attempted.  Ex
parte Hawkins, 6 S.W.3d 554, 560 (Tex. Crim. App. 1999).  Under the current Penal Code, robbery is a
form of assault:

The common law analysis of the nature of a robbery
offense was correct under Art. 1408, supra, as the offense required a completed
theft as an element of the crime.  Under
Sec. 29.03, however, no completed theft is required.  Under the new Penal Code, the offense is no
longer an aggravated form of theft. . . . 

 

A description of the property involved in the
robbery was required under Art. 1408 because the offense was characterized as a
theft.  The change in the focus of the
statute, coupled with this Court’s decision [that no description of the
property was required] in Reese,
[531 S.W.2d 638] compels the conclusion that the present robbery offense is
assaultive in nature.

 

Hawkins, 6 S.W.3d at 559–60 (Tex. Crim. App. 1999) (citing Ex parte Lucas, 574 S.W.2d 162, 163–64
(Tex. Crim. App. 1978)); accord Hightower
v. State, 629 S.W.2d 920,
922 (Tex. Crim. App. [Panel Op.] 1981) (robbery is form of assault); Rohlfing
v. State, 612 S.W.2d 598,
602 (Tex. Crim. App. [Panel Op.] 1981) (“The current penal code robbery
offenses are assaultive in nature and are not aggravated forms of theft.”).

            In
Hawkins, the Texas Court of Criminal
Appeals recognized that even though aggravated robbery is recognized as an
offense against property due to its placement in Title 7 of the Texas Penal
Code, the primary interest protected by this offense is “the security of the
person from bodily injury or threat of bodily injury that is committed in the
course of committing theft.”  Hawkins, 6 S.W.3d at 560 (citing Chestnut
v. State, 567 S.W.2d 1, 2
(Tex. Crim. App. [Panel Op.] 1978)).

            Moreover,
the placement of aggravated robbery in Title 7 of the Texas Penal Code,
although a form of assault, “allowed the joinder of repeated robberies under
the original statutes for the joinder of offenses which allowed the joinder of
only Title 7 offenses.”  Hawkins, 6 S.W.3d at 560.  Thus, the legislative decision to place
robbery in Title 7 of the Code is not necessarily indicative of the Legislature’s
intent to impose multiple punishments for aggravated robbery and aggravated
assault.  

            Next,
we address whether the common focus tends to indicate a single instance of
conduct. In this regard, we examine the “allowable unit of prosecution,” which
is defined by the Legislature and determines if one course of conduct results
in more than one offense.  Ex parte
Cavazos, 203 S.W.3d 333
(Tex. Crim. App. 2006).  As recognized in
Bigon, “[u]sually analysis of an allowable
unit of prosecution involves a situation in which two offenses from the same
statutory section are charged, but the spirit behind the principle is fitting
here.”  Bigon, 252 S.W.3d at 371–72 (double jeopardy analysis regarding
convictions for felony murder, intoxication manslaughter, and
manslaughter).  

            The
allowable unit of prosecution for an assaultive offense is each victim.  Hawkins,
6 S.W.3d at 560.  Because robbery is
a form of assault, the allowable unit of prosecution for robbery likewise is
each victim.  Id. (holding that defendant’s prosecution for
robbery twice when two victims were assaulted in course of committing theft did
not violate Double Jeopardy Clause). 
Because aggravated robbery is an assaultive offense, with the unit of
prosecution being one victim (as is the case for aggravated assault), the
common focus of each offense in conjunction with the fact that the common focus
tends to indicate a single instance of conduct, are indicia of legislative
intent not to permit multiple punishments in this circumstance.

            We must also determine
whether the elements that differ between the offenses can be considered
the “same” under an imputed theory of liability which would result in the
offenses being considered the same under Blockburger.  In
this case, those differing elements are “bodily injury” and “serious bodily
injury.”  Aggravated robbery was
pled as causing bodily injury to Ellis, a person sixty-five years of age or
older, by hitting him with a hammer. 
This allegation, pled in accordance with the statute, does not include
the element of serious bodily injury.  See Tex.
Penal Code Ann. § 29.03(3). 

            The
concept of imputing elements into an offense in order to determine if the
offenses are the “same offenses” for purposes of double jeopardy has not been
widely explored in caselaw.  In fact, Ervin is the only reported case that has
positively determined this factor.  In
that case, the court concluded that manslaughter and intoxication manslaughter
are the same offense for double jeopardy purposes when they involve the same
victim, and imposing convictions for both violates the Double Jeopardy
Clause.  Ervin, 991 S.W.2d at 817.  

            In
arriving at this conclusion, the court recognized that the statute defining
intoxication manslaughter does not include a mental state,[12]
while the statute defining manslaughter requires a mental state of “recklessly.”[13]
In finding the two offenses were nevertheless the “same offense” for double
jeopardy purposes, the Ervin court
found that intoxication manslaughter can be viewed as having the element of
recklessness by imputation, thus making the offenses the same under the
liberalized, “imputation” version of the Blockburger
test (finding that intoxication was an imputed form of recklessness).  Id.
at 816.

            Ervin involved the imputation of a
culpable mental state.  Here, the
differing element is the degree of bodily injury.  While imputation of a culpable mental state
in Ervin made logical sense, we see
no logic in imputing the element of “serious bodily injury” in the charge of
aggravated robbery when that charge already includes the element of “bodily
injury.”

            Logic
would seem to dictate, however, that because the proof at trial established
that Ellis suffered serious bodily injury,[14] such
proof should be sufficient to answer the issue at hand.  To take into account such proof, however,
would require the application of the “cognate evidence” analysis, an approach
in which the court includes the facts adduced at trial in its lesser-included
offense analysis.  Hall, 225 S.W.3d at 526.[15]  Because we are bound to apply the cognate
pleadings approach to lesser-included offenses, we find that aggravated assault
in this case is not a lesser-included offense of aggravated robbery.  See id.
at 535.  To conclude otherwise would
require a finding of legislative intent not to permit multiple punishments for
each offense alleged, when we remain unconvinced of such intent.  While double jeopardy precludes a defendant
from being punished twice for the same offense, it does not prevent a second
punishment for the same conduct.  E.g.,
Blockburger, 284 U.S. at 303–04 (holding two convictions for one sale of
narcotics that violated two statutory provisions did not violate double
jeopardy).  Accordingly, we conclude that
McCrary’s double jeopardy protections were not violated.  

            B.        Lesser-Included
Offenses

            In his next three
points of error, McCrary complains that the trial court erred in failing to
instruct the jury on certain purported lesser-included offenses.  Under certain, limited circumstances, a
criminal defendant in Texas will be entitled to a jury charge on a lesser-included
offense of the offense charged.  See,
e.g., Mathis v. State,
67 S.W.3d 918, 925 (Tex. Crim. App. 2002). 
The first step in determining whether an offense is a lesser-included
offense of the alleged offense is a question of law.  It must “be, capable of being performed
before trial by comparing the elements of the offense as they are alleged in
the indictment or information with the elements of the potential
lesser-included offense.”  Hall, 225 S.W.3d at 535–36.  The second step in this analysis asks whether
there is evidence that supports giving the instruction to the jury.  Id. at
536.  That is, there must be evidence in
the record that would permit a jury to rationally find that the defendant is
guilty only of the lesser offense.  Rousseau
v. State, 855 S.W.2d 666,
672 (Tex. Crim. App. 1993). 
Appellate courts should review all the evidence presented in trial in
making this determination.  Bignall v.
State, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994).

            (1)        Aggravated
Assault /Assault

            McCrary
first contends that he was entitled to a lesser-included offense instruction on
assault on the indicted charge of aggravated assault.[16]  The State concedes that because assault
is a lesser-included offense of aggravated assault, McCrary has met the first prong of the Royster-Rousseau
test.  The State nevertheless disputes
entitlement to the lesser-included offense charge because it maintains there is
either no evidence or no more than a scintilla of evidence that would permit a
jury to rationally find that if McCrary is guilty, he is guilty of only the
lesser charge.  

            Anything more than a scintilla of evidence
is sufficient to entitle a defendant to a lesser charge.  Bignall, 887 S.W.2d at 23.  However, it is not sufficient that the jury
might have disbelieved evidence pertaining to the greater offense.  Hampton v. State, 109 S.W.3d 437, 441
(Tex. Crim. App. 2003).  There must be
some evidence directly germane to a lesser-included offense for the fact-finder
to consider before an instruction on a lesser-included offense is warranted.  Id.  McCrary
points to certain evidence at trial that he maintains is sufficient to entitle
him to a lesser charge.  Because McCrary
was charged with a conspiracy theory of liability for aggravated assault, the
second prong is met only if there is evidence in the record showing either (1)
there was no aggravated assault; (2) the aggravated assault was not committed
in furtherance of a conspiracy; or (3) the aggravated assault should not have
been anticipated.  McCrary contends that the
aggravated assault should not have been anticipated.  We disagree.

            The testimony at trial
indicated the initial plan for stealing Ellis’ money was to have Ellis pay to
have sex with Rebecca.  The plan changed
to one in which Rebecca would offer to have sex with Ellis for money and then,
at the opportune time, hit Ellis in the head to knock him out and take his
money.  It is unclear whether this plan
included the use of a hammer.  Finally,
the last plan, and the one implemented, was for Rebecca to hit Ellis in the
head with a hammer and take the money away from him while Cleveland and McCrary
dealt with Lenox.  The evidence further
indicates that as McCrary, Cleveland, and Rebecca arrived at Ellis’ house on
December 9, McCrary handed the hammer to Rebecca and instructed her to hit
Ellis with it, but not to kill him.  

            McCrary himself, in
statements to law enforcement officers, indicated the plan was to sell sexual
favors for money.[17]  McCrary contends that the jury could have
believed this was the only plan and could therefore have found him guilty only
of assault.  In conjunction with this
contention, McCrary maintains that the jury could have believed that he could
not have anticipated that in carrying out the plan to obtain Ellis’ money,
Rebecca would have hit Ellis in the head with a hammer.  

            We do not find the
evidence here to be directly germane to the lesser-included offense of assault.  Criminal responsibility for the conduct of
another is set forth in Section 7.02 of the Texas Penal Code.  It requires, in pertinent part, that:

If, in the attempt to carry out a conspiracy to
commit one felony, another felony is committed by one of the conspirators, all
conspirators are guilty of the felony actually committed, though having no
intent to commit it, if the offense was committed in furtherance of the
unlawful purpose and was one that should have been anticipated as a result of
carrying out the conspiracy.

 

Tex.
Penal Code Ann. § 7.02(b). 
Accordingly, McCrary could not have been found guilty as a party to the
offense of aggravated assault with a deadly weapon unless he intended to commit
a felony offense.  McCrary’s statement to
law enforcement—that Rebecca intended to sell sexual favors for money—indicates
McCrary only intended to commit the misdemeanor offense of prostitution.[18]  Under this scenario, Section 7.02(b) of the Penal
Code would not apply, as by definition, it applies only to felony
offenses.  Said another way, if McCrary’s
statement that he only intended for Rebecca to commit prostitution was believed
by the jury, he would then not be guilty of any offense under Section 7.02(b),
nor would he be guilty of assault, the very offense he urges should have been
included in the jury charge.  McCrary
could not be found guilty of any greater offense he did not intend to commit,
and would not be entitled to a lesser-included charge on assault.

            According
to the second plan, Rebecca would offer sex for money and then use some force
to take the money at an opportune time. 
In this case, because McCrary would have intended to commit the felony
offense of theft from the elderly,[19] Section
7.02 applies.  Both assault and
aggravated assault are foreseeable consequences of the outcome of this
plan.  Moreover, the charge instructed
the jury on the law of parties, and it is uncontroverted that Rebecca used a
hammer during the robbery.  

            The
question concerning entitlement to the lesser-included offense of assault is
whether the evidence would permit a rational jury to make a contrary
finding.  That is, could a rational jury
determine, based on the evidence of this plan, that McCrary did not intend or
anticipate serious bodily injury to Ellis? 
Such evidence must be only more than a scintilla, and may be impeached
or contradicted, but it must be sufficient, if believed, to at least permit a
rational jury to return a verdict on the lesser-included offense.  Ex
parte Thompson, 179 S.W.3d 549, 560 (Tex. Crim. App. 2005).  On these facts, no evidence exists that
McCrary is guilty only of assault.  

(2)        Bodily
Injury to an Elderly Individual/Serious Bodily Injury to an Elderly Individual

 

            McCrary
contends the trial court erred in failing to instruct the jury on the offense
of causing bodily injury to an elderly individual as a lesser-included offense
of the indicted charge of causing serious bodily injury to an elderly
individual.[20]  The State concedes that McCrary has met the
first prong of the Royster-Rousseau test.  The State nevertheless disputes entitlement
to the lesser-included offense charge of bodily injury to an elderly individual
because it maintains there is either no evidence or no more than a scintilla of
evidence that would permit a jury to rationally find that if McCrary is guilty,
he is guilty of only the lesser charge. 
McCrary points to the changing plans of his co-conspirators, Cleveland
and Rebecca, referenced in the preceding section, as sufficient evidence to
entitle him to the lesser charge of bodily injury to an elderly
individual.  Based on the foregoing
analysis, we overrule this point of error. 
Both bodily injury and serious bodily injury to an elderly individual
are foreseeable consequences of the aforementioned plan to steal money from
Ellis.  

            (3)        Aggravated
Robbery/Assault

            In his final point
of error, McCrary complains of the trial court’s refusal to instruct the jury
on the offense of assault as a lesser-included offense of the indicted charge
of aggravated robbery.[21]  The State concedes that McCrary has met the
first prong of the Royster-Rousseau test.  The State nevertheless disputes entitlement
to the lesser-included offense charge of assault because it maintains there is
either no evidence or no more than a scintilla of evidence that would permit a
jury to rationally find that if McCrary is guilty, he is guilty of only the
lesser charge.  Here again, McCrary
points to the changing plans of his co-conspirators, Cleveland and Rebecca,
referenced in the preceding section, as sufficient evidence to entitle him to
the lesser charge of bodily injury to an elderly individual.  

            Contrary
to McCrary’s contention, it matters not that the offense he may have originally
intended—theft from the elderly—subsequently escalated into aggravated robbery.  Where several people act together in pursuit
of an unlawful act, each one is liable for collateral crimes, even though they
may have been unplanned and unintended, if those crimes are foreseeable,
ordinary, and probable consequences of the execution of the unlawful act.  Curtis
v. State, 573 S.W.2d 219 (Tex. Crim. App. [Panel Op.] 1978); Gutierrez v. State, 681 S.W.2d 698, 702
(Tex. App.––Houston [14th Dist.] 1984, pet. ref’d).  Here, aggravated robbery was alleged in the
indictment as “caus[ing] serious bodily injury to another . . . or
threaten[ing] or plac[ing] another person in fear of imminent bodily injury or
death, if the other person is . . . 65 years of age or older . . . .”  Tex.
Penal Code Ann. § 29.03. 
Aggravated robbery is a foreseeable consequence of the plan to steal
money from Ellis, an elderly individual. 
Based on the foregoing analysis, we overrule this point of error.  

            We affirm the judgment of the trial
court.

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          September 16, 2010

Date Decided:             November 2, 2010

 

Publish











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Gov’t Code Ann. § 73.001
(Vernon 2005).  We are unaware of any
conflict between precedent of the Twelfth Court of Appeals and that of this
Court on any relevant issue.  See Tex. R. App. P. 41.3.

 





[2]McCrary
was charged under the law of parties; by acting with intent to promote the
commission of the listed offenses, McCrary was found to have solicited,
encouraged, directed, aided, or attempted to aid Rebecca Cleveland in committing
these offenses.  See Tex.
Penal Code Ann. § 7.02(a)(2) (Vernon 2003).  

 





[3]U.S. Const. amend. V.





[4]In
her initial statement to law enforcement, Rebecca indicated that the plan was
to proposition Ellis for sex and take his money.  Rebecca’s final statement to law enforcement
did not involve any sexual favors; it involved taking money directly from
Ellis. 

 





[5]In
December 2008, Lenox lived with Ellis.





[6]Count
one of the indictment charges that McCrary did then and there:

 

Intentionally,
knowingly, or recklessly cause serious bodily injury to Hollis Ellis by hitting
him in the head, and the defendant did then and there use or exhibit a deadly
weapon, to-wit:  a hammer, during the
commission of said assault.

                





[7]Count
two of the indictment charges that McCrary did then and there:

 

Intentionally
or knowingly cause serious bodily injury to Hollis Ellis, an individual 65
years of age or older, by hitting him in the head with a hammer.

 





[8]Count
three of the indictment charges that McCrary did then and there:

 

While
in the course of committing theft of property and with intent to obtain or
maintain control of said property, intentionally, knowingly, or recklessly
cause bodily injury to Hollis Ellis, a person 65 years of age or older, by
hitting him with a hammer. 





[9]This
Penal Code provision provides that “[a] person commits an offense if he
intentionally, knowingly, recklessly, or with criminal negligence, . . . causes
. . . [an] elderly individual . . . serious bodily injury. . . .”  Tex.
Penal Code Ann. § 22.04(a)(1).





[10]In Gonzalez v.
State, 973 S.W.2d 427 (Tex. App.––Austin 1998), aff’d, 8 S.W.3d 640 (Tex. Crim. App. 2000), the court touched on
the issue of whether injury to an elderly individual was a lesser-included
offense of aggravated robbery, but stated that: 

 

We express no opinion on
whether the injury to an elderly individual offense is a lesser included
offense of, and, therefore, could be considered the “same offense” as, the
aggravated robbery offense as set out in any of the three paragraphs as we did
not grant discretionary review on this issue. We note, however, that the
Legislature apparently has authorized multiple punishments even if these
offenses could be considered the “same” under double jeopardy principles.  See Tex. Penal Code Ann. § 22.04(h) (person
“subject to prosecution” for injury to elderly individual and “another section
of this code may be prosecuted under either or both sections”); Hunter, 459 U.S. at 366; Whalen, 445 U.S. at 693–94.

 

Id. at 641 n.4. 





[11]An
offense is a lesser-included offense if:

 

                (1)           it is established by proof of the
same or less than all the facts required to establish the commission of the
offense charged;

 

                (2)           it differs from the offense charged
only in the respect that a less serious injury or risk of injury to the same
person, property, or public interest suffices to establish its commission;

 

                (3)           it differs from the offense charged
only in the respect that a less culpable mental state suffices to establish its
commission; or

 

                (4)           it consists of an attempt to commit
the offense charged or an otherwise included offense.

 

Tex. Code Crim.
Proc. Ann. art. 37.09 (Vernon 2006); Aguilar v. State, 263 S.W.3d 430, 435 (Tex. App.––Houston
[1st Dist.] 2008, pet. ref’d).





[12]Tex. Penal Code Ann. § 49.08 (Vernon
Supp. 2010).  

 





[13]Tex. Penal Code Ann. § 19.04 (Vernon
2003).  





[14]Ellis
suffered blunt trauma injuries to the head, of such severity as to reach the
skull.  This level of trauma has been
known to cause death.  

 





[15]Under
this approach, a lesser-included offense instruction may be given even though
all of the statutory elements of the lesser offense are not contained in the
greater offense, if the “overlapping elements relate to the common purpose of
the statutes” and the specific evidence adduced would support an instruction on
the cognate offense.  Hall, 225 S.W.3d at 526 n.8.  

 

We also note that to the extent McCrary’s double
jeopardy claim is based on the same conduct, i.e., hitting Ellis in the head
with a hammer, such contention is without merit.  As the Texas Court of Criminal Appeals
explained in Ortega v. State, 171
S.W.3d 895, 901 (Tex. Crim. App. 2005), the “same conduct” rule announced in Grady v. Corbin, 495 U.S. 508 (1990),
was overruled by the Supreme Court in United
States v. Dixon, 509 U.S. 688, 704 (1993). 
In Corbin, the defendant drove
a vehicle that crossed the center line of a highway and struck another vehicle,
killing the driver and injuring her passenger.  He was convicted of driving while intoxicated
and failing to keep right of the median. Then he was indicted for homicide and
assault offenses.  He moved to dismiss
the indictment on double jeopardy grounds. Corbin,
495 U.S. at 511–14.  The Corbin
Court stated that “[t]he critical inquiry is what conduct the State will
prove, not the evidence the State will use to prove that conduct.”  Id.
at 521.  The Court said that “the State
has admitted that it will prove the entirety of the conduct for which Corbin
was committed–driving while intoxicated and failing to keep right of the
median–to establish essential elements of the homicide and assault offenses.
Therefore, the Double Jeopardy Clause bars this successive prosecution . . .
.”  Id. at 523.  In
rejecting this reasoning, the Dixon
Court stated:

 

We have concluded, however,
that Grady [v. Corbin] must be overruled.  Unlike Blockburger analysis, whose
definition of what prevents two crimes from being the “same offence,” U.S.
Const., Amdt. 5, has deep historical roots and has been accepted in numerous
precedents of this Court, Grady lacks constitutional roots.  The “same-conduct” rule it announced is wholly
inconsistent with earlier Supreme Court precedent and with the clear common-law
understanding of double jeopardy.

 

Ortega, 171
S.W.3d at 899 (citing Dixon, 509 U.S.
at 704).





[16]Tex. Penal Code Ann. § 22.02.





[17]McCrary
also contends that the jury could have believed, given the evidence of changing
plans, that he intended for Rebecca to knock the money out of Ellis’ hand
and/or use some type of force to steal it, and that he had no knowledge that
Rebecca would use a hammer hit Ellis.  





[18]Tex. Penal Code Ann. § 43.02 (Vernon
Supp. 2010).

 





[19]Tex. Penal Code Ann. § 31.03(f)(3)
(Vernon Supp. 2010).  The evidence at
trial indicated that McCrary intended to steal as much as $25,000.00 from
Ellis.  





[20]Tex. Penal Code Ann. § 22.04.





[21]Tex. Penal Code Ann. § 29.03.